IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
CLARKSBURG

JEROME NAQUAN HAYNES,

    Petitioner,

v.

UNITED STATES OF AMERICA,

    Respondent.

Civil No.:   1:16-CV-162
CRIMINAL NO.: 1:14-CR-32
(JUDGE KEELEY)

## REPORT AND RECOMMENDATION

### I. INTRODUCTION

On July 26, 2016, Jerome Naquan Haynes ("Petitioner"), proceeding *pro se*, filed a Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody.  (Civil Action No. 1:16-CV-162, ECF No. 1; Criminal Action No. 1:14-CR-32, ECF No. 402).[1] On July 26, 2016, the Court issued a Notice of Deficient Pleading to Petitioner to comply with the Local Rules.  ECF No. 404.  On January 6, 2017, Petitioner completed the Court Approved Form for filing a Motion under 28 U.S.C. § 2255. ECF No. 448.  On February 23, 2017, the Government filed their Response in Opposition to Petitioner's Motion.  ECF No. 452.  Petitioner filed a Reply [ECF No. 467]

---

[1] From this point forward, all ECF Numbers refer to Petitioner's Criminal Action, 1:14-CR-32.

1

and a supplemental Reply [ECF No.489]. The undersigned now issues this Report and Recommendation on the Petitioner's motion without holding an evidentiary hearing. For the reasons stated below, the undersigned recommends that the District Judge deny and dismiss the Petitioner's motion.

## II. FACTS

### A. Conviction and Sentence

On May 9, 2014, a criminal complaint was filed which charged Petitioner with aiding and abetting in the distribution of oxycodone, in violation of 21 U.S.C. § § 841(a)(1), 841(b)(1)(C), and 18 U.S.C. § 2. ECF No. 1. On May 28, 2014, the Grand Jury issued a Second Superseding Indictment charging Petitioner in two counts of a nine count indictment.  More specifically, Count One charged Petitioner with Conspiracy with Intent to Distribute and to Distribute Oxycodone in violation of 21 U.S.C. §§ 841(a)(1), 846 and 841(b)(1)(C).  Count Nine charged Petition with Distribution of Oxycodone within 1000 feet of a Protected Location – Aiding and Abetting in violation of 21 U.S.C. § 841(a)(1), 841(b)(1)(C) and 860, and Title 18 U.S.C. § 2.  ECF No. 102

### 1. PLEA HEARING

On July 9, 2014, Petitioner entered a guilty plea to aiding and abetting in the distribution of oxycodone within 1000 feet of a protected location pursuant to a plea agreement. ECF No.

2

179. The plea agreement allowed Petitioner to retain his appellate rights and rights to collaterally attack his sentence only with respect to any sentence imposed using a base offense level 30 or higher. ECF No. 179 at 6. At sentencing District Judge Keeley determined that the guideline base offense level was a 27. ECF No. 362 at 81. Because a base offense level of 27 is less than 30, Petitioner waived his right to appeal and to collaterally attack his sentence pursuant to his plea agreement. ECF No. 179 at 6. During the plea hearing, Petitioner stated under oath that he understood the terms of the plea agreement regarding his appellate rights and his rights to collaterally attack his sentence.

> THE COURT: Did you understand that under paragraph thirteen of your written plea agreement, if the District Judge's actual sentence is the same as or equal to a guideline sentence which uses a base offense level of 29 or lower then you give up your right to appeal and you give up your right to collaterally attack that actual sentence?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: Did you intend to give up the right of direct appeal and the right of collateral attack as set out in paragraph thirteen of your plea agreement?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: You're only keeping those two valuable direct and indirect appeal rights if your actual sentence is the same as or equal to a guideline sentence with a base offense level of 30 or higher.
>
> THE DEFENDANT: Yes, sir.

ECF No. 327 at 23.   Moreover, Petitioner affirmed he was
completely satisfied with the legal assistance his attorney
provided in this case. Id. at 26. Further the plea agreement
provided and the parties represented to the Court at the plea
hearing that Petitioner did not agree with a 2 level fire arm
enhancement or a 3 level role enhancement but that the
Government would argue the application of those enhancements at
sentencing. ECF No. 327 at 9:2-5.   Petitioner acknowledged his
understanding that the District Judge would make a determination
based upon any evidence and the arguments of law that were
presented during the sentencing hearing as to whether the
firearm enhancement and whether the role enhancement would
apply.   Id. at 33.   Petitioner agreed with Magistrate Judge
Kaull that he had no idea of how the District Judge would rule
regarding the enhancements at the time of plea hearing but still
desired to plead guilty pursuant to the terms of the plea
agreement.   Id. at 34.   Ultimately, the District Judge
determined that the base offense level was 27 and that the
firearm and role enhancements did apply creating an adjusted
offense level of 34.   ECF No. 362 at 81.

## 2. SENTENCING

On November 13, 2014, Petitioner's sentencing hearing
commenced before the Honorable Irene M. Keeley, United States
District Judge.   ECF No. 328.   Petitioner was sworn under oath

4

and was made aware that if he testified falsely about material
matters, he could face a further charge of false swearing or
perjury.  Id. at 3.  The objection regarding the applicability
of the firearm enhancement was litigated.  Id.  The Government
called two co-defendants, Chad Register and Deadryl Maddox, and
a Task Force officer to testify as to Petitioner's possession of
firearms. Petitioner subsequently took the stand and
contradicted this testimony, denying that he had ever purchased
or possessed firearms. Id. at 40. After Petitioner's testimony,
the Government viewed Petitioner "…as having lied about
everything material in this case, as having falsely denied his
relevant conduct to which he stipulated previously and as having
attempted to obstruct justice in this case at the sentencing."
Id. at 64.  The Court continued the sentencing hearing because
Petitioner's testimony during the sentencing hearing appeared to
counter his testimony during his plea hearing. More
specifically, the Court noted it needed time to re-evaluate the
plea hearing and Petitioner's testimony from the sentencing
hearing before it could make a decision regarding the
applicability of the enhancements. Id. at 67.

On May 15, 2015, the Court resumed the sentencing hearing
in this case, and addressed the issues in dispute regarding the
applicable enhancements related to Petitioner's role in the
offense, the possession of a firearm, the obstruction of justice

regarding Petitioner's testimony, and Petitioner's acceptance of responsibility in entering into the plea agreement.  ECF No. 362.  As for the firearm enhancement, the Court weighed the evidence and applied the firearm enhancement because the testimony of Officer Rogers, Chad Register and Deadryl Maddox was found to be more credible than Petitioner's.  Id. at 14. The Court also applied the enhancement for Petitioner's role in the offense, citing to Petitioner's personal participation in the scheme, his decision-making authority, his recruitment of two other participants, his personal control over the supply of drugs to be distributed, the fact that there was five or more participants, and the extensive nature of the drug distribution activity. Id. at 22-23.  The Court explained the legal construct for applying an obstruction of justice enhancement, U.S.S.G 3C1.1, and weighed the factors laid out in Dunnigan[2] and Jones[3] to determine if the enhancement was applicable to Petitioner. Id. at 62-70. Ultimately, the Court found Petitioner had lied and applied the enhancement. Id. at 70.  Because the Petitioner had lied, the Court initially denied him the reduction for acceptance of responsibility.  Id. at 70-71. However, after hearing Petitioner's allocution, the District Judge changed her

---

[2] United States v. Dunnigan, 507 U.S. 87 (1993).
[3] United States v. Jones, 308 F3d. 425, (4th Cir. 2002).

mind and applied the two level reduction for acceptance of
responsibility.  Id. at 80-81.

> MR. DYER: Your Honor, the defendant has just indicated
> to me as well that he would like to acknowledge full
> responsibility for the firearms and his role in the
> offense. He can do that himself or you can question
> him about that but I wanted to bring that—
>
> THE COURT: I think he has to do it. I don't think we
> should take it from you.
>
> MR. DYER: Sure.
>
> THE DEFENDANT: I take full responsibility for my
> actions, Your Honor, the firearm, the leadership and
> the relevant conduct.
>
> THE COURT: Are you admitting today that you in fact
> did purchase those two firearms, the handgun and the
> Ringer?
>
> THE DEFENDANT: Yes, ma'am.
>
> THE COURT: Are you admitting today that through Casey
> Searcy and others you were engaged in a drug
> distribution scheme that was extensive here in this
> area?
>
> THE DEFENDANT: Yes, ma'am.

Id. at 79-80.  The Sentencing Court determined Petitioner's base
offense level is a 27.  The Court further applied a three level
enhancement under 3B1.1(b) for aggravating role; a two level
enhancement under 2D1.1(b)(1) for firearms; and a two level
enhancement for obstruction of justice for an adjusted offense
level of 34.  Id. at 81. After the Petitioner's allocution,the
Court granted Petitioner the two level reduction for acceptance
of responsibility for an adjusted total offense level of thirty-

7

two and imposed a sentence of one hundred twenty-one months,
which was the lower end of the guideline range.  Id. at 82 and
90.

## B. Appeal

Petitioner's plea agreement appellate waiver specified that
Petitioner would be able to appeal if the "base offense level"
was "30 or higher."  ECF No. 179 at ¶ 13.  In this case, the
District Judge determined the base offense level to be 27. ECF
No. 362 at 81. Therefore, Petitioner waived his appellate rights
and his rights to collaterally attack his sentence. ECF No. 179.
On May 26, 2015, Petitioner's Notice of Appeal was filed with
the Fourth Circuit Court of Appeals. ECF No. 344. Appellate
Counsel filed an Anders[4] brief addressing the application of the
firearms and role enhancement. ECF No. 378. The brief concluded
that there were no meritorious grounds for appeal but questioned
whether the District Court clearly erred in applying sentencing
enhancements for Petitioner's possession of a firearm and his
role in the offense. Id. at 2. On December 3, 2015, the Fourth
Circuit Court of Appeals issued a decision holding that there
was evidence to support the district judge's application of the
enhancements ruling that there was "no clear error…." ECF No.
378. Now Petitioner, in his Motion under 28 U.S.C. § 2255,

---

[4] Anders v. California, 386 U.S. 738 (1967).

brings the same issues under the cloak of ineffective assistance of counsel. ECF No. 448.

### C. Federal Habeas-Motion to Vacate [ECF No. 402, 448]

On July 26, 2016, Petitioner filed a Motion to Vacate[5] alleging ineffective assistance of counsel on two grounds. Ground One stated that Defense counsel had in his possession an investigative report confirming that the firearm exchange did not involve Petitioner and defense counsel failed to make this known to the Court.  ECF No. 448 at 6. Similarly, Ground Two states that defense counsel had an investigative report showing that Petitioner only sold pills to a single co-defendant and did not submit this information to the Court. Id. at 8. Petitioner alleges if the March 31, 2014, reports had been submitted to the court, he would not have received sentencing enhancements for his possession of a firearm and his role in the offense. Additionally, in Petitioner's Reply [ECF No. 467] and Supplemental Reply [ECF No. 489] Petitioner alleges that the recent Supreme Court case, Lee v. USA, 137 S.Ct. 1958, (2017), held that the Defense attorney was ineffective for giving "bad advice." ECF No. 489 at 1.

On February 23, 2017, the Government filed a response stating that the Petitioner's ineffective assistance of counsel

---

[5]  On January 6, 2017, Petitioner filed his motion on the court approved form. All further references to Petitioner's Motion to Vacate will be to the motion filed on the court approved form.  ECF No. 448.

claims are meritless as is clearly demonstrated by the transcripts of the plea hearing and sentencing hearings. ECF No. 452. The firearm and role enhancement issues were thoroughly litigated and the Court applied those enhancement based on the P.S.R. and the testimony of witnesses. Id. Additionally, the Fourth Circuit affirmed the District Judges rulings on those issues. Id.

In his reply [ECF No. 467], Petitioner submitted as exhibits the documents that he alleges his attorney should have submitted at sentencing. ECF No. 467-1,2,3.  The Government's response correctly identified these documents as March 31, 2014, interviews with co-defendants, even though those documents were not attached to the Motion.  ECF 452 at 8 and ECF No. 467-3. The Government asserts that these interviews were included in the United States Version of the Offense which appears in the P.S.R. in this case. Id. at 8. Accordingly, the content of these interviews were presented to the Court through the P.S.R.  ECF No. 341 at 6 ¶¶13, 17 and at 14 ¶44.

## III. ANALYSIS

### A. Petitioner bears the burden of proof by a preponderance of the evidence.

"A petitioner collaterally attacking his sentence of conviction bears the burden of proving his sentence or conviction was imposed in violation of the Constitution or laws of the United States, that the court was without jurisdiction to impose such a sentence, that the sentence exceeded the maximum authorized by the law, or that the sentence is otherwise subject to collateral attack.  28 U.S.C. § 2255.  A motion collaterally attacking a petitioner's sentence brought pursuant to § 2255 requires the petitioner to establish his grounds by a preponderance of the evidence." Sutton v. United States of America, 2006 WL 36859 at 2 (E.D. Va. Jan. 4, 2006.)

### B. Petitioner waived his right to appeal and collaterally attack his sentence because the District Court determined his base offense was less than thirty.

"[T]he guilty plea and the often concomitant plea bargain are important components of this country's criminal justice system. Properly administered, they can benefit all concerned." Blackledge v. Allison, 431 U.S. 63, 71 (1977).  However, the advantages of plea bargains "can be secure . . . only if dispositions by guilty plea are accorded a great measure of finality." Id. "To this end, the Government often secures waivers of appellate rights from criminal defendants as part of their

11

plea agreement." United States v. Lemaster, 403 F.3d 216, 220
(4th Cir. 2005).

In United States v. Attar, 38 F.3d 727, 731 (4th Cir.
1994), the Fourth Circuit found that "a waiver-of-appeal-rights
provision in a valid plea agreement is enforceable against the
defendant so long as it is the result of a knowing and
intelligent decision to forgo the right to appeal." The Fourth
Circuit then found that whether a waiver is knowing and
intelligent "depends upon the particular facts and circumstances
surrounding [its making], including the background, experience,
and conduct of the accused." Id. After upholding the general
validity of a waiver-of-appeal-rights provision, the Fourth
Circuit noted that even with a waiver-of-appeals-rights
provision, a defendant may obtain appellate review of certain
limited grounds. Id. at 732. For example, the Court noted that a
defendant "could not be said to have waived her right to
appellate review of a sentence imposed in excess of the maximum
penalty provided by statute or based on a constitutionally
impermissible factor such as race." Id. Nor did the Court believe
that a defendant "can fairly be said to have waived his right to
appeal his sentence on the ground that the proceedings following
the entry of the guilty plea were conducted in violation of the
Sixth Amendment right to counsel." Id.

Subsequently, in Lemaster, the Fourth Circuit saw no reason to distinguish between waivers of direct appeal rights and waivers of collateral attack rights. Lemaster, 403 F.3d at 220. Therefore, like the waiver-of-appeal-rights provision, the Court found that the waiver of the right to collaterally attack a sentence is valid as long as it is knowing and voluntary. Id. And, although the Court expressly declined to address whether the same exceptions apply since Lemaster failed to make such an argument, the court stressed that it "saw no reason to distinguish between waivers of direct-appeal rights and waivers of collateral-attack rights." Id. at n.2.

Based on these cases, it appears that ineffective assistance of counsel claims are barred by a valid waiver, to the extent that the facts giving rise to the claims occurred prior to the defendant entering his guilty plea. Only claims arising after the entry of the guilty plea may fall outside the scope of the waiver. Attar, 38 F.3d at 732 (holding it cannot be fairly said that a defendant "waived his right to appeal his sentence on the ground that the proceedings following entry of the guilty plea were conducted in violation of the Sixth Amendment right to counsel, for a defendant's agreement to waive appellate review of his sentence is implicitly conditioned on the assumption that the proceedings following entry of the plea

13

will be conducted in accordance with constitutional limitations").

Therefore, when reviewing an ineffective assistance of counsel claim in a case where there is a waiver of collateral-attack rights in a plea agreement, we must first determine whether there is valid waiver. In doing so, the validity of an appeal waiver depends on whether the defendant knowingly and intelligently agreed to waive the right to appeal. Although this determination is often made based on adequacy of the plea colloquy--specifically, whether the district court questioned the defendant about the appeal waiver--the issue ultimately is evaluated by reference to the totality of the circumstances. Thus, the determination must depend, in each case, upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused. United States v. Blick, 408 F.3d 162, 169 (4th Cir. 2005).

In other words, the Court must examine the actual waiver provision, the plea agreement as a whole, the plea colloquy, and the defendant's ability to understand the proceedings. Id. If the Court finds that the waiver is valid, any IAC claims arising prior to the plea agreement are barred by the waiver.

As to any IAC claims made regarding an attorney's action, or lack thereof, after the plea agreement, the Fourth Circuit has

stated the right to challenge a sentence on the ground that "the proceedings following entry of the guilty plea--including both the sentencing hearing itself and the presentation of the motion to withdraw their pleas--were conducted in violation of their Sixth Amendment right to counsel" are not waived by a general waiver of appeal rights contained in the plea agreement. Attar, 38 F.3d at 732-33. Therefore, upon first blush it appears that IAC claims arising after the guilty plea and/or during sentencing are not barred by a general waiver of appeal rights.

Several courts have distinguished IAC claims raised in a § 2255 case from those raised on direct appeal. In Braxton v. United States, 358 F. Supp. 2d 497 (W.D. Va. 2005), the Court noted that although the Fourth Circuit has yet to define the scope of waiver of collateral rights, several courts have held that § 2255 waivers should be subject to the same conditions and exceptions applicable to waivers of the right to file a direct appeal. Braxton at 502 (citing United States v. Cannady, 283 F.3d 641, 645 n.3 (4th Cir. 2000) (collecting cases); Butler v. United States, 173 F. Supp. 2d 489, 493 (E.D. Va. 2001)). Nonetheless, the Court distinguished the types of IAC claims available on direct appeal from those available in a § 2255 motion. Specifically, the Court noted:

> Appellate courts rarely hear ineffective
> assistance of counsel claims on direct
> review. Indeed, '[i]t is well settled that a

15

claim of ineffective assistance should be
raised in a 28 U.S.C. § 2255 motion in the
district court rather than on direct appeal,
unless the record conclusively shows
ineffective assistance.' <u>United States v.
King</u>, 119 F.3d 290, 295 (4th Cir. 1997).
Therefore, the waiver exception recognized
in <u>Attar</u> applies only to a very narrow
category of cases. In contrast, a rule that
defendants are unable to waive their right
to bring an ineffective  assistance claim in
a § 2255 would create a large exception to
the scope of § 2255 waivers. In fact, such an
exception would render all such waivers
virtually meaningless because most habeas
challenges can be pressed into the mold of a
Sixth Amendment claim on collateral review.
The Fifth Circuit has recognized this
dynamic by noting that '[i]f all ineffective
assistance of counsel claims were immune
from waiver, any complaint about process
could be brought  in a collateral attack by
merely challenging the attorney's failure to
achieve the desired result. A knowing and
intelligent waiver should not be so easily
evaded.' <u>United States v. White</u>, 307 F.3d
336, 344 (5th Cir. 2002).

<u>Braxton</u>, 358 F. Supp. 2d at 503.

The Court in <u>Braxton</u> further noted that the Tenth Circuit

has also distinguished collateral-attack waivers from the

situation in <u>Attar</u> and that the Fourth Circuit's holding in

<u>United States v. Broughton-Jones</u>, 71 F.3d 1143,1147 (4th Cir.

1995) also supports such a distinction. <u>Braxton</u>, 358 F. Supp. 2d

at 503, n. 2. Finally, the <u>Braxton</u> Court found it persuasive

that the majority of circuits to have confronted this question

"have held that collateral attacks claiming ineffective

assistance of counsel that do not call into question the

16

validity of the plea or the § 2255 waiver itself, or do not relate directly to the plea agreement or the waiver, are waivable." Id. at 503 (collecting cases).

The unpublished decision United States v. Morris, 247 Fed. App'x 459 (4th Cir. Sept. 13, 2007) indicates that when the district court conducts a thorough Rule 11 colloquy and the defendant specifically mentions he waives the right to appeal any sentence below the statutory maximum, the record established that defendant made a knowing and voluntary waiver of rights.

Similarly here, the district court conducted a Rule 11 colloquy as follows:

> THE COURT: Did you also discuss with Mr. Dyer that you may collaterally attack or challenge your sentence and how that sentence is being carried out by filing a motion under 28 U.S.C., Section 2255?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: And you understood that collateral attack to be a habeas corpus type motion?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: Did you understand that under paragraph thirteen of your written plea agreement, if the District Judge's actual sentence is the same as or equal to a guideline sentence which uses a base offense level of 29 or lower then you give up your right to appeal and you give up your right to collaterally attack that actual sentence?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: Did you intend to give up the right of

17

direct appeal and the right of collateral attack
as set out in paragraph thirteen of your plea
agreement?

THE DEFENDANT: Yes, sir.

THE COURT: You're only keeping those two valuable
direct and indirect appeal rights if your actual
sentence is the same as or equal to a guideline
sentence with a base offense level of 30 or
higher.

THE DEFENDANT: Yes, sir.


THE COURT: Did you understand base offense is the
starting point?

THE DEFENDANT: Yes, sir.

THE COURT: In other words, it's before
adjustments?

THE DEFENDANT: Yes, sir.

Plea Transcript, ECF No. 327 at 24-25.

   As noted above, the District Judge determined at sentencing
that the Petitioner's base offense level was 27 which is below
30.  ECF No. 362 at 81. Accordingly, the undersigned finds the
Petitioner waived his right to collaterally attack his sentence.

### C. Ineffective Assistance of Counsel Standard

   Regardless of whether Petitioner waived his right to
collaterally attack his sentence, the undersigned will also
address Petitioner's claims of ineffective assistance of counsel
on the merits.

Claims of ineffective assistance of counsel are measured under a two-part analysis outlined in Strickland v. Washington, 466 U.S. 668, 687 (1984).  First, "the defendant must show that counsel's performance was deficient." Id. Second, "the defendant must show that the deficient performance prejudiced the defense." Id.  These two prongs are commonly referred to as the "performance" and "prejudice" prongs. Fields v. Att'y Gen. of Md., 956 F.2d 1290, 1297 (4th Cir. 1992).

To satisfy the "performance" prong, the defendant must show that counsel was objectively unreasonable.  Strickland, 466 U.S. at 688. In other words, the defendant must show that "counsel made errors so serious that counsel was not functioning as the counsel guaranteed . . . by the Sixth Amendment." Id. at 687. However, a reviewing court does not "grade" the counsel's performance and a strong presumption exists that the "counsel's conduct falls within the wide range of reasonable professional assistance." Carter v. Lee, 283 F.3d 240, 249 (4th Cir. 2002). Principally, the reviewing court must not "second-guess" counsel's performance and must "evaluate counsel's performance from counsel's perspective at the time."  Hunt v. Lee, 291 F.3d 284, 289 (4th Cir. 2002).

To satisfy the "prejudice" prong, the defendant must show that "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable."

19

Id. at 687.   Consequently, if counsel's errors have no effect on the judgment, the conviction should not be reversed. Id. at 691. The Fourth Circuit has recognized that, if a defendant "cannot demonstrate the requisite prejudice, [then] a reviewing court need not consider the performance prong" and *vice versa*. Fields, 956 F.2d at 1297.

### 1. Petitioner fails to satisfy the performance prong.

Petitioner is unable to show that his counsel's performance was deficient regarding the applicability of the firearm and role enhancements.  As for the firearm enhancement, Petitioner claims that Defense Counsel had evidence of an investigation report confirming that the firearm exchange did not involve Petitioner. ECF No. 448 at 6. Furthermore, Petitioner claims Defense Counsel should have brought the report to the sentencing court's attention, as counsel had been asked to do, but did not. Id.

The Court finds that those documents were included in the P.S.R. which was thoroughly reviewed by counsel and the Court prior to and during the sentencing.  See ECF No. 341 at 6 ¶¶ 13,17 and at 14 ¶¶44-46.  Additionally, the sentencing hearing transcripts from both hearings illustrates the lengthy argument and testimony presented to the Court by Defense Counsel against the application of the firearm enhancement. ECF No. 328 at 5. The United States and Defense Counsel litigated the issue, and

ultimately, the Court decided to apply the enhancement based on the credible testimony of two co-defendants, Chad Register and Deadryl Maddox and Officer Rogers. ECF No. 362 at 15. Accordingly, the contents of the reports Petitioner refers to were part of the P.S.R. and therefore part of the evidence considered at the sentencing hearing. ECF No. 368.  Ultimately, Petitioner has failed to show that Defense Counsel erred or that his performance was otherwise deficient in regard to the firearm enhancement.

As for the enhancement for the role in the offense, Petitioner claims Defense Counsel had in his possession the March 31, 2014, consensual interviews with co-defendants, Russell Powers and George Powers, implicating that Petitioner was not their source of supply and had Defense Counsel brought this to the attention of the sentencing court, then the enhancement would not have applied. ECF No. 448 at 8. Moreover, Petitioner claims he and co-defendant, Casey Searcy, merely had a buy-sell relationship, and Petitioner had no involvement in or awareness of the distribution activities of Casey Searcy or other co-defendants. Id.; ECF No. 362 at 17-18. It is clear from the Petitioner's reply that these interviews on March 31, 2014, were included in the United States' Version of the Offense in the P.S.R. The P.S.R. was adopted without objection by the Court as an accurate description of the offense conduct in this case.

21

ECF No. 328 and 362. The P.S.R. references information obtained through consensual interviews of the co-defendants conducted on March 31, 2014. ECF No. 341 at 14 ¶¶ 45-6. The consensual interviews with the co-defendants elucidate the nature of the scheme and the interaction between the various defendants to effectuate the distribution of Oxycodone pills. <u>Id.</u> at ¶ ¶ 52, 53, and 56. The P.S.R. shows that Petitioner was directly and/or indirectly supplying a number of other individuals and that the drug distribution activity was extensive. <u>Id.</u> Based on the evidence, the Court correctly applied the role enhancement to Petitioner, and Petitioner has failed to show that Defense Counsel erred in his performance.

### 2. <u>Petitioner fails to satisfy the prejudice prong.</u>

Since the Petitioner is unable to show that Defense Counsel erred in his performance, there is no need for the undersigned to proceed to the second prong of the analysis.  However, even if defense counsel erred in failing to present these reports as exhibits, the contents of the reports were contained in the P.S.R. Therefore, there was no prejudice.  The enhancement issues were thoroughly litigated in the District Court and the District Court's decision was affirmed by the Fourth Circuit. In this case, Petitioner has failed to establish Defense Counsel's performance was deficient or that he was prejudiced by any alleged deficiency.

**D. Petitioner's reliance on Lee v. U.S., 137 S.Ct. 1958 (2017).**

In Petitioner's supplemental reply, he asserts that the Lee[6] case provides that if Defense counsel gives bad advice it is ineffective assistance of counsel. ECF No. 489. This simply isn't the ruling in Lee. Id. In Lee, the Defendant alleged that he would not have plead guilty had he known that by so doing he was subject to mandatory deportation and the Supreme Court ruled that his counsel's failure to advise him of that fact was ineffective. Id.

Petitioner does not argue that this case applies to his plea hearing, but that it applies to his acceptance of responsibility for the firearm and role enhancements. ECF No. 489 at 3. Petitioner complains that Defense counsel advised him to accept responsibility so that he would get a two level reduction. ECF 489 at 4. Petitioner argues that he was going to get the acceptance of responsibility anyway and it was bad advice for him to admit to the role and firearm enhancements. Id. at 4. It is clear from the sentencing transcript that it was not until Petitioner's allocution that the Sentencing Court decided to give the Petitioner the two level reduction for acceptance of responsibility. ECF No. 362 at 81-82. Regardless, the Lee case does not apply in this case as it involved failure to advise the Defendant of the penalty of

---

[6] Lee v. U.S., 137 S.Ct. 1958 (2017)

mandatory deportation, and not bad advice as the Petitioner

alleges.  <u>Lee v. U.S., 137 S.Ct. 1958 (2017).</u>

### IV.        RECOMMENDATION

For the foregoing reasons, the undersigned recommends that

Petitioner's Motion under 28 U.S.C. § 2255 to Vacate, Set Aside,

or Correct Sentence by a Person in Federal Custody [Civil Action

No. 1:16-CV-162, ECF Nos. 1 & 19; Criminal Action No. 1:14-CR-

32-8, ECF Nos. 402 & 448] be **DENIED** and **DISMISSED.**

Within **fourteen (14) days** after being served with a copy of

this report and recommendation, any party may file with the

Clerk of Court written objections identifying those portions of

the recommendation to which objections are made and the basis

for such objections.  A copy of any objections shall also be

submitted to the Honorable IRENE M. KEELEY, United States

District Judge.  Failure to timely file objections to this

recommendation will result in waiver of the right to appeal from

a judgment of this Court based upon such recommendation.  28

U.S.C. § 636(b)(1); <u>Thomas v. Arn</u>, 474 U.S. 140 (1985); <u>Wright

v. Collins</u>, 766 F.2d 841 (4th Cir. 1985); <u>United States v.

Schronce</u>, 727 F.2d 91 (4th Cir. 1984), <u>cert. denied</u>, 467 U.S.

1208 (1984).

The Court directs the Clerk of the Court to mail a copy of

this Report and Recommendation to the *pro se* petitioner by

certified mail, return receipt requested, to his last known

address as reflected on the docket sheet and to all counsel of record, as provided in the Administrative Procedures for Electronic Case Filing in the United States District Court for the Northern District of West Virginia.

Further, because this Report and Recommendation completes the referral from the District Court, the Clerk is directed to terminate the Magistrate Judge association with this case.


DATED: April 18, 2018



_____
ROBERT W. TRUMBLE
UNITED STATES MAGISTRATE JUDGE